IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | CR. NO.: __2:25-cr-362__ |
| | ) | |
| | ) | **18 U.S.C. § 371** |
| | ) | **18 U.S.C. § 666** |
| **vs.** | ) | **18 U.S.C. § 1343** |
| | ) | **18 U.S.C. § 1346** |
| | ) | **18 U.S.C. § 1951** |
| | ) | **18 U.S.C. § 1956** |
| **JEROME SYDNEY HEYWARD** | ) | **18 U.S.C. § 981(a)(1)(C)** |
| | ) | **18 U.S.C. § 982(a)(1)** |
| | ) | **18 U.S.C. § 982(a)(2)(A)** |
| | ) | **28 U.S.C. § 2461(c)** |
| | ) | |
| | ) | **INFORMATION** |
| | ) | **(UNDER SEAL)** |

BACKGROUND

1.     The Defendant, **JEROME SYDNEY HEYWARD**, is a resident of North Charleston, South Carolina.

2.     North Charleston is a municipality in South Carolina. From 2019 to 2024, North Charleston received over $10,000 in federal funds each fiscal year.

3.     In November 2019, **JEROME SYDNEY HEYWARD** was elected to the North Charleston City Council, representing District Five. At all times relevant to this Information, **JEROME SYDNEY HEYWARD** served as a member of the North Charleston City Council.

4.     The North Charleston City Council is the elected body clothed with the power and authority to make rules and pass ordinances in North Charleston. The North Charleston City Council is comprised of an at-large mayor and ten council members elected from single-member districts every four years. North Charleston City Council has the power and duty to:

    a.  exercise the corporate powers of the City of North Charleston;
    b.  consider and enact legislation;

1

    c. set official city policy;
    d. hold public hearings on matters concerning zoning and grant funds;
    e. approve franchises, enact business license fees, and levy taxes;
    f. adopt an annual budget; and
    g. approve or disapprove requests for zoning.

The North Charleston City Council meets the first and third Thursday of every month.

5.      The Public Safety Committee is a committee of the North Charleston City Council comprised of all members of City Council. The Public Safety Committee meets the third Thursday of every month during regularly scheduled City Council meetings.

6.      As a member of the North Charleston City Council, **JEROME SYDNEY HEYWARD**, and the other councilmembers, are public officials subject to the provisions of South Carolina's Ethics Reform Act. *See* S.C. Code §§ 8-13-100 *et seq.*

7.      In addition to serving as a North Charleston City Councilman, **JEROME SYDNEY HEYWARD** worked as a "consultant" and owned a consulting business, "Heyward Consulting." **JEROME SYDNEY HEYWARD** manages and controls a bank account for Heyward Consulting titled J S Heyward Consulting LLC.

8.      **JEROME SYDNEY HEYWARD** corruptly used his position as a North Charleston City Councilman to engage in the three schemes outlined below to personally enrich himself through bribes, kickbacks, and extortion and to deprive the citizens and the government of North Charleston of their intangible right to the honest and faithful services of the North Charleston City Council. In the first scheme below, **JEROME SYDNEY HEYWARD** extorted a businessman by soliciting payments in exchange for his official action as a City Councilman. In the second scheme below, **JEROME SYDNEY HEYWARD** accepted bribes from an individual working on behalf of a company with business before North Charleston City Council in exchange for his official action related to that business. In the third scheme below, **JEROME SYDNEY**

**HEYWARD** embezzled funds belonging to the City by soliciting and accepting payments from non-profit organizations that received grant funds from the City in exchange for his official action.

### Background on Businessman 1 Extortion Scheme

9.    Businessman 1, known to the United States Attorney, owns property in North Charleston and regularly conducts business in the City. Businessman 1 has been advocating for changes in North Charleston that would benefit his private business operations. As such, Businessman 1 has interacted with North Charleston City Council and other city officials and employees regarding his properties and businesses. Businessman 1's prior efforts to effectuate change to benefit his businesses and properties have been unsuccessful.

10.    In October 2023, **JEROME SYDNEY HEYWARD** approached Businessman 1 and requested Businessman 1's financial support of his re-election campaign, as well as the campaigns of four other candidates running for North Charleston City Council. Businessman 1 gave **JEROME SYDNEY HEYWARD** and the other four candidates lawful campaign donations.

11.    Thereafter, **JEROME SYDNEY HEYWARD** requested to meet Businessman 1 in person. During this meeting, **JEROME SYDNEY HEYWARD** expressed to Businessman 1 that he could consult and lobby for the changes Businessman 1 sought in North Charleston.

12.    After the meeting, **JEROME SYDNEY HEYWARD's** assistant emailed Businessman 1 a "Consulting Agreement." The Consulting Agreement required Businessman 1 to pay **JEROME SYDNEY HEYWARD** a $10,000 fee upfront and $7,500 monthly for twelve months in exchange for **JEROME SYDNEY HEYWARD's** lobbying and consulting services. In the Consulting Agreement, **JEROME SYDNEY HEYWARD** agreed to lobby and consult with various state and local government bodies on Businessman 1's behalf, including the City of North Charleston.

13.    Businessman 1 reported the interaction with **JEROME SYDNEY HEYWARD** to the Federal Bureau of Investigation ("FBI"). Businessman 1 agreed to cooperate with the investigation that followed. Businessman 1 allowed the FBI to record telephone calls and in-person meetings between Businessman 1 and **JEROME SYDNEY HEYWARD**, and others, and to provide the FBI with all relevant documents and communications.

14.    Thereafter, Businessman 1 met **JEROME SYDNEY HEYWARD** to discuss the Consulting Agreement. During the meeting, **JEROME SYDNEY HEWYARD** claimed to have significant influence and control over other elected officials on the North Charleston City Council. **JEROME SYDNEY HEYWARD** assured Businessman 1 that—because of his control over other members of City Council—he would be able to achieve changes related to Businessman 1's properties and businesses, to directly benefit Businessman 1. Businessman 1 agreed to the $10,000 upfront fee but negotiated the $7,500 monthly fee that **JEROME SYDNEY HEYWARD** originally requested to $5,000 per month.

15.    On March 11, 2024, using FBI funds, Businessman 1 paid **JEROME SYDNEY HEYWARD** $15,000 via wire transfer, consisting of the $10,000 upfront fee and the $5,000 monthly fee.  On April 5, 2024, using FBI funds, Businessman 1 paid **JEROME SYDNEY HEYWARD** an additional $5,000 via wire transfer.

16.    Thereafter, **JEROME SYDNEY HEYWARD** called North Charleston City employees and officials. **JEROME SYDNEY HEYWARD** arranged and attended numerous meetings with North Charleston City employees. During these calls and meetings, **JEROME SYDNEY HEYWARD** advocated on Businessman 1's behalf and sought assistance from other City officials. **JEROME SYDNEY HEYWARD** pressured North Charleston City employees and officials to effectuate the changes Businessman 1 sought, including the re-zoning of Businessman

1's property, the issuance of business licenses, and potential property swaps. **JEROME SYDNEY HEYWARD** never disclosed his personal financial interest, nor did he disclose that Businessman 1 was paying him in exchange for his official action.

### COUNT 1
### Attempted Extortion Under Color of Official Right and Using Fear of Economic Harm, 18 U.S.C. § 1951

17.     The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 16 as if fully set forth herein.

18.     From in or around October 2023 to July 2024, in the District of South Carolina, the Defendant, **JEROME SYDNEY HEYWARD**, in his capacity as a North Charleston City Councilman, did knowingly obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, and did attempt to obstruct delay, and affect commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951; that is, the Defendant, **JEROME SYDNEY HEYWARD**, obtained the property of Businessman 1 with Businessman 1's consent, under the color of official right and induced by the wrongful use of fear of economic harm;

In violation of Title 18, United States Code, Section 1951(a).

### COUNTS 2 and 3
### Honest Services Wire Fraud, 18 U.S.C. Sections 1343 and 1346

19.     The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 16 of this Information as if fully set forth herein:

20.     Beginning in or around October 2023 and continuing until in or around May 2024, in the District of South Carolina, the Defendant **JEROME SYDNEY HEYWARD** knowingly devised and intended to devise a scheme and artifice to defraud and deprive the citizens of North

Charleston, South Carolina of their intangible right to the honest and faithful services of the North Charleston City Council.

21.    The purpose of the scheme was for **JEROME SYDNEY HEYWARD** to unlawfully benefit and enrich himself.

22.    The manner and means by which **JEROME SYDNEY HEYWARD** carried out the scheme included, but were not limited to, the following:

    a.  **JEROME SYDNEY HEYWARD**, believing that he had reached a corrupt agreement with Businessman 1, corruptly accepted money from Businessman 1 in exchange for his official action as a North Charleston City Councilman, including advocating on Businessman 1's behalf and pressuring North Charleston City employees and officials to assist Businessman 1.

    b.  In exchange for **JEROME SYDNEY HEYWARD's** official actions, **JEROME SYDNEY HEYWARD** corruptly solicited and accepted $20,000 from Businessman 1.

    c.  **JEROME SYDNEY HEYWARD** concealed his activity and relationship with Businessman 1. **JEROME SYDNEY HEYWARD** shared false information to explain his involvement with Businessman 1 and failed to disclose his direct financial interest or that he solicited and accepted payments from Businessman 1.

23.    On or about each of the dates set forth below, in the District of South Carolina and elsewhere, the Defendant **JEROME SYDNEY HEYWARD**, for the purpose of executing the above-described scheme and artifice to defraud and deprive, knowingly transmitted and caused to be transmitted by means of wire communications in interstate commerce the writings, signs, signals, pictures, and sounds described below:

| Count | Approximate Date | Description |
|---|---|---|
| **2** | March 11, 2024 | Wire transfer from Businessman 1 to **JEROME HEYWARD** account ending in 4304 |
| **3** | April 5, 2024 | Wire transfer from Businessman 1 to **JEROME HEYWARD** account ending in 4304 |

All in violation of Title 18, United States Codes, Sections 1343 and 1346.

## Background on Company A Bribery Scheme

24.     Mike A. Brown ("Mike Brown-1"),[1] charged elsewhere, is a resident of North Charleston, South Carolina. In 2015, Mike Brown-1 was elected to the North Charleston City Council, representing District One, and was reelected to that seat in 2019 and 2023. At all times relevant to this Information, Mike Brown-1 served as a member of the North Charleston City Council. In addition to his position as a North Charleston City Councilman, Mike Brown-1 co-owned the Blue Note Bistro, a lounge in North Charleston. In March 2024, the Blue Note Bistro ceased operations.

25.     Sandino Moses ("Moses"), charged elsewhere, is a resident of North Charleston, South Carolina. In 2023, Moses was elected to the North Charleston City Council, representing District Four.

26.     Company A, known to the United States Attorney, is a boat manufacturing company located in Berkeley County, South Carolina.

27.     Company A is owned by Businessman 2, known to the United States Attorney.

28.     In 2023, the Charleston County Parks & Recreation Commission ("CCPRC") accepted a proposal from Company A to grant a ninety-year lease on a tract of land in North Charleston, hereinafter the "Property."[2] The lease would allow Company A to build a boat manufacturing facility, clean up and remediate the property, and pay for a 46-acre public park. In April 2023, the North Charleston City Council, which has jurisdiction over the property, rezoned

---

[1]     There are presently three Michael Browns who serve as North Charleston Councilmembers. Mike A. Brown represents District One ("Mike Brown-1"). Mike Brown Jr. ("Mike Brown-7") represents District Seven and is Mike Brown-1's son. Michael Brown ("Michael Brown-10") represents District Ten and is unrelated to Mike Brown-1 and Mike Brown-7.

[2]     The tract of land is in Charleston County and is known as the Baker Hospital Site, which formerly housed the Baker Hospital complex.

the site from general business and light industrial to single-family residential, putting Company A's plans on hold.

29.    In February 2024, on behalf of Company A, the CCPRC, as the technical owner of the Property, requested that the City of North Charleston re-zone the property to enable Company A to build the boat manufacturing plant.

30.    Anticipating strong community opposition to the proposed rezoning, Company A hired "lobbyists" and "consultants" to promote the project and assist their efforts in rezoning the Property. Company A engaged Aaron Hicks ("Hicks", charged elsewhere) and Hason Tory Fields ("Fields", charged elsewhere) in February 2024. Hicks and Fields were both paid by Company A. Company A agreed to pay Fields $30,000 upfront and $5,000 per month. Company A agreed to pay Hicks $10,000 for March and $10,000 for April 2024, and later agreed to pay Hicks $5,000 per month for May and June 2024.

31.    The rezoning application was scheduled to come before North Charleston City Council's Public Safety Committee for a first reading on April 18, 2024 during the regularly scheduled City Council meeting. All eleven City Councilmembers sit on the Public Safety Committee; thus, the Public Safety Committee's meetings are, for all intents and purposes, full City Council meetings.

32.    Prior to the April 18th vote, it was unclear whether the rezoning proposal would pass. In and around early 2024, Hicks agreed to pay **JEROME SYDNEY HEYWARD** and Mike Brown-1 in exchange for their influence on North Charleston City Council and support of the rezoning application. It was part of the agreement that Aaron Hicks would pay **JEROME SYDNEY HEYWARD** and Mike Brown-1 kickbacks from a portion of the consulting fees he received from Company A.

33.     On April 16, 2024, FBI received court-authorization to intercept wire and electronic communications occurring over **JEROME SYDNEY HEYWARD's** cellular telephone. On April 17, FBI began intercepting **JEROME SYDNEY HEYWARD's** communications. FBI conducted two, 30-day periods of interceptions:  from April 17 to May 16, 2024, and from June 6 to July 5, 2024.

34.     On April 17, 2024, **JEROME SYDNEY HEYWARD** and Mike Brown-1 discussed Company A's proposal and expressed concern that they did not have enough votes secured to advance CCPRC's zoning application, submitted on behalf of Company A.

35.     On April 17, 2024, at 10:41 a.m., Mike Brown-1 called **JEROME SYDNEY HEYWARD** and asked if he had spoken with a Company A employee. Mike Brown-1 then expressed frustration that Company A had not yet paid Hicks, indicating that he had hoped to receive money from Hicks to help his son with wedding expenses. In reference to the money he expected to receive from Aaron Hicks—money belonging to Company A—Mike Brown-1 stated: "S***, this free money." Mike Brown-1 told **JEROME SYDNEY HEYWARD** to call Company A's employee to encourage them to pay Hicks, and **JEROME SYDNEY HEWYARD** agreed to do so.

36.     On or about April 18, 2024, at 11:31 a.m., **JEROME SYDNEY HEYWARD** received a call from Hicks. Hicks expressed frustration with Company A and their failure to pay him the second half his $10,000 consulting fee for the month of April. Hicks stated: "I've been trying to get that squared away before the vote happens tonight." **JEROME SYDNEY HEYWARD** and Hicks then discussed **JEROME SYDNEY HEYWARD's** previous call with Mike Brown-1 and Mike Brown-1's need for the money to help his son with wedding expenses. Hicks agreed to try to get the money from Company A in advance of the vote.

37.     On or about April 18, 2024, at 4:25 p.m.—an hour before the Public Safety meeting during which City Council was scheduled to vote on CCPRC's zoning application on behalf of Company A—Hicks called **JEROME SYDNEY HEYWARD**. During the call, Hicks told **JEROME SYDNEY HEYWARD**, "I was calling you earlier, before I go into work, wanted to let you know I had got your money." Hicks then told **JEROME SYDNEY HEYWARD** that he wanted to meet him before they entered North Charleston City Hall: "I ain't want nobody to see me talking once you had got here."

38.     On April 18, 2024—prior to the Public Safety Committee meeting—Hicks paid **JEROME SYDNEY HEYWARD** $2,500 and Mike Brown-1 at least $1,000 in cash.

39.     During the April 18, 2024 Public Safety Committee meeting, a councilmember made a motion to delay the vote by 30 days, and another councilmember seconded the motion.

40.     North Charleston City Council was then scheduled to vote on the rezoning application during the Public Safety Committee's May 16, 2024 meeting.

41.     On May 15, 2024, **JEROME SYDNEY HEYWARD** called a fellow councilmember while Hicks surreptitiously listened to the conversation. During the call, **JEROME SYDNEY HEYWARD** pressured a fellow councilmember to vote in favor of approving the application to rezone the Property.

42.     In the hours leading up to City Council's vote on the rezoning application, Hicks, Mike Brown-1, and **JEROME SYDNEY HEYWARD** expressed concerns about whether they had sufficient support in favor of the rezoning application. On May 16, 2024, **JEROME SYDNEY HEYWARD** and Hicks discussed that the rezoning application likely would not pass. However, they both wanted to continue to advance the construction of the boat manufacturing plant for their own personal enrichment. **JEROME SYDNEY HEYWARD** suggested that they look for

alternative locations to construct the plant. Hicks then said, "Let me ask you this, Jerome. This is how we eat on the back side in my mind, if we either pull that off, . . . and I keep that deal with [Company A] like I work out, he keeps me on board and then I set my price and we continue to eat, right?"

43.    On May 16, 2024, CCPRC withdrew its rezoning application, on behalf of Company A, prior to the Public Safety Committee meeting because they learned that they did not have the necessary support on City Council to approve the rezoning application.

44.    On June 5, 2024, Aaron Hicks accepted $5,000 from Company A via check.

**COUNT 4**
**Conspiracy to Commit Bribery with Respect to Programs Receiving**
**Federal Funds and Honest Services Wire Fraud, 18 U.S.C. Section 371**

45.    The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 8 and 24 through 44 of this Information as if fully set forth herein:

46.    Beginning in or around Spring 2024 and continuing until in or around June 2024, in the District of South Carolina and elsewhere, the Defendant **JEROME SYDNEY HEYWARD**, and others, both known and unknown to the United States Attorney, did knowingly and willfully conspire and agree together and with each other, to commit the following offenses against the United States:

    a.  **Bribery and Kickbacks Concerning Programs Receiving Federal Funds**: that is, for the Defendant **JEROME SYDNEY HEYWARD**, an agent of the City of North Charleston, a City which during the relevant one-year period received federal benefits in excess of $10,000, and together with and aided and abetted Mike Brown-1, charged elsewhere, and others known and unknown to the United States Attorney, to corruptly solicit, demand, accept, and agree to accept for his own benefit, things of value from

Aaron Hicks, intending to be influenced and rewarded in connection with business, a transaction, and a series of transactions of the City of North Charleston involving anything of value of $5,000 of more; that is, the rezoning of the Property in North Charleston for the purpose of constructing a boat manufacturing plant, in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2; and

b. **Honest Services Wire Fraud**: that is, for the Defendant **JEROME SYDNEY HEYWARD**, and others known and unknown to the United States Attorney, to devise and intend to devise a scheme and artifice to defraud and deprive the citizens of North Charleston and the government of the City of North Charleston of their right to the honest and faithful services of **JEROME SYDNEY HEYWARD**, a North Charleston City Councilmember, through bribery and kickbacks, in violation of Title 18, United States Code, Sections 1343 and 1346.

<u>Purposes of the Conspiracy</u>

47.    It was a purpose of the conspiracy for **JEROME SYDNEY HEYWARD**, Mike Brown-1, and Aaron Hicks to enrich themselves by exploiting **JEROME SYDNEY HEYWARD's** and Mike Brown-1's official positions as North Charleston City Councilmembers to obtain bribes and kickbacks from Aaron Hicks in exchange for their influence on North Charleston City Council and support of the rezoning of the Property.

48.    It was a further purpose of the conspiracy for Aaron Hicks to successfully lobby and consult for and on behalf of Company A and the rezoning of the Property by corruptly enriching **JEROME SYDNEY HEYWARD** and Mike Brown-1, to further enrich himself in the future.

49.     It was a further purpose of the conspiracy for **JEROME SYDNEY HEYWARD**, Mike Brown-1, and Aaron Hicks to conceal their corrupt scheme from other North Charleston City Councilmembers and the citizens of North Charleston.

<u>Manner and Means of the Conspiracy</u>

50.     The manner and means of the conspiracy included, but were not limited to, the following:

51.     In the Fall of 2023, Aaron Hicks pursued "lobbying" and/or "consulting" opportunities for Company A. In February 2024, Company A retained Aaron Hicks as a "lobbyist" and/or "consultant" to advocate on behalf of Company A and the rezoning of the Property for the construction of a boat manufacturing plant.

52.     Beginning in or around March and April 2024, **JEROME SYDNEY HEYWARD** and Mike Brown-1 agreed with Aaron Hicks to use their positions as North Charleston City Councilmembers to support the rezoning of the Property, influence other City Councilmembers to support the rezoning of the Property, and vote to approve CCPRC's rezoning application. In exchange, Aaron Hicks agreed to kick back a portion of the consulting and/or lobbying fees he received from Company A to **JEROME SYDNEY HEYWARD** and Mike-Brown 1.

53.     On February 26, 2024, Aaron Hicks received $10,000 from Company A via check. Aaron Hicks cashed the check and gave $2,500 in cash to **JEROME SYDNEY HEYWARD**.

54.     On April 18, 2024, Aaron Hicks received $5,000 from Company A via check. On April 18, 2024, Aaron Hicks cashed the $5,000 check and gave $2,500 in cash to **JEROME SYDNEY HEYWARD** and at least $1,000 cash to Mike Brown-1.

55.     Beginning in and around February 2024 and continuing to at least in or around June 2024, **JEROME SYDNEY HEYWARD** and Mike Brown-1, being agents and representatives of

the City of North Charleston, advocated for the construction of Company A's boat manufacturing plant and the rezoning of the Property and pressured other Councilmembers to vote to approve the rezoning application.

56.     **JEROME SYDNEY HEYWARD** and Mike Brown-1 never disclosed their agreement with Aaron Hicks or that they accepted money from Aaron Hicks, working on behalf of Company A, in exchange for their influence on North Charleston City Council and support of the rezoning of the Property. **JEROME SYDNEY HEYWARD** and Mike Brown-1 took steps to conceal material information about their relationship with Aaron Hicks and other individuals associated with and working on behalf of Company A from the citizens of North Charleston and their fellow Councilmembers.

<u>Overt Acts in Furtherance of the Conspiracy</u>

57.     In furtherance of the conspiracy, and to achieve its purposes, **JEROME SYDNEY HEYWARD**, Mike Brown-1, and Aaron Hicks, and others known and unknown to the United States Attorney, committed the following overt acts, among others, in the District of South Carolina and elsewhere:

58.     On or about February 26, 2024, Aaron Hicks received $10,000 from Company A.

59.     On or about April 2, 2024, Aaron Hicks received $5,000 from Company A.

60.     On or about April 17, 2024, Mike Brown-1 told **JEROME SYDNEY HEYWARD** to call Company A's employee to pressure and/or encourage them to pay Aaron Hicks.

61.     On or about April 18, 2024, Aaron Hicks received $5,000 from Company A.

62.     On or about May 3, 2024, Aaron Hicks received $5,000 from Company A via check.

63.     On or about May 15, 2024, **JEROME SYDNEY HEYWARD** called Sandino Moses to pressure him to vote approve the rezoning application.

64.     On or about June 5, 2024, Aaron Hicks received $5,000 from Company A via check.

All in violation of Title 18, United States Code, Section 371.

### COUNT 5
**Bribery with Respect to Programs Receiving Federal Funds,**
**Title 18 U.S.C. Sections 666(a)(1)(B) and (b) and 2**

65.     The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 8 and 24 through 64 of this Information as if fully set forth herein:

66.     Beginning in or about February 2024 and continuing until in or about June 2024, in the District of South Carolina and elsewhere, the Defendant, **JEROME SYDNEY HEYWARD**, being an agent and representative of the City of North Charleston, a local government agency that received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, and other forms of Federal assistance in a one year period, together with and aided and abetted by others known and unknown to the United States Attorney, did corruptly solicit, demand, and knowingly accept and agree to accept, for his own benefit, a thing of value from Aaron Hicks, charged elsewhere, intending to be influenced and rewarded in connection with a business, transaction and series of transactions involving $5,000 or more, that is, the rezoning of Properties Addressed as 2349 and 2381 Baker Hospital Boulevard and 2750 Speissegger Drive in Charleston County;

All in violation of Title 18, United States Code, Section 666(a)(1)(B) and (b) and 2.

## COUNT 6
### Honest Services Wire Fraud, 18 U.S.C. Sections 1343, 1346 and 2

67.     The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 8 and 24 through 64 of this Information as if fully set forth herein:

68.     As set forth above, beginning in or around February 2024 and continuing until in or around June 2024, in the District of South Carolina and elsewhere, the Defendant **JEROME SYDNEY HEYWARD** and others known and unknown to the United States Attorney, knowingly devised and intended to devise a scheme and artifice to defraud and deprive the citizens of North Charleston, South Carolina and the government of North Charleston of their intangible right to the honest services of a public office, namely the honest services of **JEROME SYDNEY HEYWARD** and other North Charleston City Councilmembers, through bribery and kickbacks.

69.     On or about April 18, 2024, in the District of South Carolina and elsewhere, the Defendant **JEROME SYDNEY HEYWARD**, aided and abetted by others both known and unknown to the United States Attorney, having devised the above-described scheme and artifice to defraud and deprive by means of materially false and fraudulent pretenses, representations, and promises, and the omission of material information, and for the purpose of executing the above-described scheme and artifice to defraud and deprive, transmitted and caused to be transmitted by means of wire communication in interstate commerce, any writings, signs, signals, pictures, and sounds, that is, a $5,000 check to Aaron Hicks from Company A;

All in violation of Title 18, United States Codes, Sections 1343, 1346, and 2.

17

**Background on Non-Profit Scheme**

70.     In April 2022, the City of North Charleston began discussing whether to distribute funds to non-profits in an effort to reduce violent crime ("violence reduction grants"). The City assembled a group to solicit applications from non-profit organizations and then decide which groups would ultimately receive funds.

71.     Developing, Educating and Empowering People SC Inc. ("DEEP SC") is a non-profit corporation that was formed under South Carolina law in January 2021. Michelle Stent-Hilton ("Stent-Hilton"), charged elsewhere, is the registered agent for DEEP SC. From on or before the formation of DEEP SC through the date of this Information, Stent-Hilton served as **JEROME SYDNEY HEYWARD's** personal assistant.

72.     Donavan Laval Moten ("Moten"), charged elsewhere, is a resident of North Charleston, South Carolina. Core4Success Foundation is a non-profit organization that was formed under South Carolina law in August 2018. Moten is the founder and registered agent of Core4Success.

73.     Rose Emily Lorenzo ("Lorenzo"), charged elsewhere, is a North Carolina resident who operates a non-profit as well as a business services firm doing business as Lorenzo Financial Services LLC ("Lorenzo Financial"). Lorenzo Financial was incorporated under the laws of the State of North Carolina in January 2022. Through Lorenzo Financial, Lorenzo provides bookkeeping, tax preparation, and business advisory services to clients.

74.     With support and encouragement from **JEROME SYDNEY HEYWARD**, DEEP SC and Core4Success applied for violence reduction grant funds from the City of North Charleston. In exchange for his support of their applications, Stent-Hilton and Moten agreed to pay **JEROME SYDNEY HEYWARD** twenty percent of any monies the non-profits received

from the City of North Charleston as a kickback. Lorenzo agreed to allow **JEROME SYDNEY HEYWARD**, Stent, and Moten to launder the money through Lorenzo Financial's business checking account to conceal the source and destination of the funds.

<u>**COUNT 7**</u>
**Conspiracy to Commit Bribery with Respect to Programs Receiving Federal Funds and Honest Services Wire Fraud, Title 18 U.S.C. Section 371**

75.     The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 8 and 70 through 74 of this Information as if fully set forth herein:

76.     Beginning in April 2022, and continuing until in or about July 2024, in the District of South Carolina and elsewhere, the Defendants **JEROME SYDNEY HEYWARD**, and others, both known and unknown to the United States Attorney, did knowingly and willfully conspire and agree together and with each other, to commit the following offenses against the United States:

a.   **Bribery and Kickbacks Concerning Programs Receiving Federal Funds**: that is, for the Defendant **JEROME SYDNEY HEYWARD**, an agent of the City of North Charleston, a City which during the relevant one-year period received federal benefits in excess of $10,000, and together with and aided and abetted by Michelle Stent-Hilton, Donavan Laval Moten, and Rose Lorenzo, charged elsewhere, and others known and unknown to the United States Attorney, to corruptly solicit, demand, accept, and agree to accept for his own benefit, things of value from Michelle Stent-Hilton and Donavan Laval Moten, intending to be influenced and rewarded in connection with business, a transaction, and a series of transactions of the City of North Charleston involving anything of value of $5,000 or more; that is, the awarding of violence reduction grants by the City of North Charleston to DEEP SC and Core4Success, in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2; and

19

b. **Honest Services Wire Fraud**: that is, for the Defendant **JEROME SYDNEY HEYWARD**, and others known and unknown to the United States Attorney, to devise and intend to devise a scheme and artifice to defraud and deprive the citizens of North Charleston and the government of the City of North Charleston of their right to honest and faithful services of **JEROME SYDNEY HEYWARD**, a North Charleston City Councilmember, through bribery and kickbacks, in violation of Title 18, United States Code, Sections 1343 and 1346.

Purposes of the Conspiracy

77.     It was a purpose of the conspiracy for **JEROME SYDNEY HEYWARD**, Michelle Stent-Hilton, Donavan Laval Moten, and Rose Emily Lorenzo to enrich themselves, their non-profits, and their businesses by exploiting **JEROME SYDNEY EYWARD's** official position as a North Charleston City Councilmember.

78.     It was further part of the conspiracy for **JEROME SYDNEY HEYWARD** to obtain bribes and kickbacks from Michelle Stent-Hilton and Donavan Laval Moten in exchange for his influence on North Charleston City Council and support of DEEP SC's and Core4Success's applications to receive funds from the violence reduction grants.

79.     It was a further purpose of the conspiracy for **JEROME SYDNEY HEYWARD**, Michelle Stent-Hilton, Donavan Laval Moten, and Rose Emily Lorenzo to conceal their corrupt scheme from other North Charleston City Councilmembers and the citizens of North Charleston.

Manner and Means of the Conspiracy

80.     The manner and means of the conspiracy included, but were not limited to, the following:

20

81.     Beginning in or around April 2022, **JEROME SYDNEY HEYWARD** agreed with Michelle Stent-Hilton and Donavan Laval Moten to use his official position as a North Charleston City Councilmember to support the awarding of violence reduction grants to their non-profit organizations by the City of North Charleston, influence other City Councilmembers to support the awarding of violence reduction grants, and vote to approve the proposed ordinance authorizing the City of North Charleston to distribute funds to non-profits, including DEEP SC and Core4Success. In exchange, Michelle Stent-Hilton and Donavan Laval Moten agreed to kick back a portion of the grant monies received from the City of North Charleston to **JEROME SYDNEY HEYWARD**.

82.     In the Spring 2022, DEEP SC and Core4Success applied for violence reduction grant funds that the City of North Charleston intended to award to non-profits.

83.     On November 15, 2022, the City of North Charleston's Finance Committee convened to consider nine items on its agenda, including a recommendation to award money to non-profits as part of its initiative to reduce gun violence in the community. **JEROME SYDNEY HEYWARD** is a member of the Finance Committee and participated in the consideration of the proposal. **JEROME SYDNEY HEYWARD** voted in favor of recommending to Council that the City award funds to non-profits, including DEEP SC and Core4Success. **JEROME SYDNEY HEYWARD** did not disclose his corrupt agreements with Stent-Hilton and Moten when the matter was presented to the Finance Committee and put to a vote.

84.     On December 8, 2022, City Council convened a meeting to consider an agenda that included a proposed ordinance authorizing the City of North Charleston to award violence reduction grants. **JEROME SYDNEY HEYWARD** was present at the meeting and—without

disclosing his personal financial interest or the corrupt agreement with Stent-Hilton and Moten—voted in favor of awarding grants to the non-profits, including DEEP SC and Core4Success.

85.    On December 15, 2022, the City of North Charleston issued checks totaling $100,000 each to DEEP SC and Core4Success. **JEROME SYDNEY HEYWARD** directed Stent-Hilton and Moten to remit his kickback through Lorenzo for the purpose of concealing the payment.

86.    On December 19, 2022, Stent-Hilton deposited the $100,000 from the City of North Charleston into DEEP SC's checking account. On December 22, 2022, Stent-Hilton withdrew $25,000 from DEEP SC's checking account and then obtained a cashier's check for $20,000 made payable to Lorenzo Financial. On December 22, 2022, the $20,000 cashier's check from DEEP SC was deposited into Lorenzo Financial's business checking account.

87.    On December 23, 2022, Core4Success, through Moten, obtained a cashier's check for $20,000 made payable to Lorenzo Financial. That same day, the check was deposited into Lorenzo Financial's business checking account.

88.    On December 27, 2022, Lorenzo Financial wired $40,000 to **JEROME SYDNEY HEYWARD's** checking account. The $40,000 kickback represented the sum of the monies Lorenzo Financial received from DEEP SC and Core4Success.

Overt Acts in Furtherance of the Conspiracy

89.    In furtherance of the conspiracy, and to achieve its purposes, **JEROME SYDNEY HEYWARD**, Michelle Stent-Hilton, Donavan Laval Moten, and Rose Emily Lorenzo, and others known and unknown to the United States Attorney, committed the following overt acts, among others, in the District of South Carolina and elsewhere:

a.  In the Spring 2022, DEEP SC and Core4Success applied for violence-reduction grants that the City of North Charleston intended to award to non-profits.

b.  On November 18, 2022, the City of North Charleston's Finance Committee, of which **JEROME SYDNEY HEYWARD** is a member, convened a meeting to consider, among other items, a recommendation to award violence reduction grants to non-profits. **JEROME SYDNEY HEYWARD** voted in favor of recommending that the City of North Charleston award such grants.

c.  On December 15, 2022, the City of North Charleston City Council convened a meeting to consider a variety of proposals, including an ordinance authorizing the city to disperse $1,200,000 in violence reduction grants to non-profits, including DEEP SC and Core4Success. **JEROME SYDNEY HEYWARD** was present at the meeting and voted in favor of the ordinance.

d.  On December 22, 2022, Michelle Stent-Hilton deposited a $100,000 check from the City of North Charleston into DEEP SC's checking account. On December 23, 2022, Michelle Stent-Hilton withdrew $25,000 from DEEP SC's checking account and purchased a $20,000 cashier's check made payable to Lorenzo Financial.

e.  On December 23, 2022, Donavan Laval Moten deposited a $100,000 check from the City of North Charleston into Core4Success's checking account, and on the same day purchased a cashier's check for $20,000 made payable to Lorenzo Financial.

f.  On December 27, 2022, Lorenzo wired $40,000 from a checking account belonging to Lorenzo Financial to a checking account belonging to **JEROME SYDNEY HEYWARD**.

All in violation of Title 18, United States Code, Section 371.

## COUNT 8
**Theft with Respect to Programs Receiving Federal Funds,**
**Title 18 U.S.C. Sections 666(a)(1)(A) and (b) and 2**

90.     The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 8 and 70 through 89 of this Information as if fully set forth herein:

91.     Beginning in or around April 2022 and until in or around July 2024, in the District of South Carolina and elsewhere, defendant **JEROME SYDNEY HEYWARD**, being an agent and representative of the City of North Charleston, a local government agency that received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, and other forms of Federal assistance in a one year period, together with and aided and abetted by Rose Emily Lorenzo, Michelle Stent-Hilton, Donavan Laval Moten, and others known and unknown to the United States Attorney, embezzled, stole, obtained by fraud, without authority knowingly converted to the use of any person other than the rightful owner, and intentionally misapplied property worth $5,000 or more and owned by, under the care of, under the custody of, and under the control of the City of North Charleston, that is: **JEROME SYDNEY HEYWARD** fraudulently obtained money from the City of North Charleston by concealing an agreement with non-profits who were soliciting funds from the City of North Charleston, inducing payments to those non-profits, and thereafter corruptly obtaining twenty percent of the funds the non-profits received from the City of North Charleston;

All in violation of Title 18, United States Code, Section 666(a)(1)(A) and 2.

## COUNT 9
**Bribery with Respect to Programs Receiving Federal Funds**
**Title 18, United States Code, Sections 666(a)(1)(B) and (b)**

92.    The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 8 and 70 through 89 of this Information as if fully set forth herein:

93.    Beginning in or around April 2022 and continuing until in or around July 2024, the Defendant, **JEROME SYDNEY HEYWARD**, being an agent of the City of North Charleston, a local government agency that received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, and other forms of Federal assistance in a one-year period, together with and aided and abetted by others known and unknown to the United States Attorney, did corruptly solicit, demand, and knowingly accept and agree to accept a thing of value from Michelle Stent-Hilton, charged elsewhere, intending to be influenced and rewarded in connection with a business, transaction, and a series of transactions involving $5,000 or more, that is, accepting $20,000 from Michelle Stent-Hilton and DEEP SC from the violence reduction grant funds in exchange for his official action as a North Charleston City Councilmember;

All in violation of Title 18, United States Code, Section 666(a)(1)(B), (b), and 2.

## COUNT 10
**Bribery with Respect to Programs Receiving Federal Funds**
**Title 18, United States Code, Sections 666(a)(1)(B) and (b)**

94.    The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 8 and 70 through 89 of this Information as if fully set forth herein:

95.    Beginning in or around April 2022 and continuing until in or around July 2024, the Defendant, **JEROME SYDNEY HEYWARD**, being an agent of the City of North Charleston, a local government agency that received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, and other forms of Federal assistance in a one-year period,

together with and aided and abetted by others known and unknown to the United States Attorney, did corruptly solicit, demand, and knowingly accept and agree to accept a thing of value from Donavan Laval Moten, charged elsewhere, intending to be influenced and rewarded in connection with a business, transaction, and a series of transactions involving $5,000 or more, that is, accepting $20,000 from Donavan Laval Moten and Core4Success from the violence reduction grant funds in exchange for his official action as a North Charleston City Councilmember;;

All in violation of Title 18, United States Code, Section 666(a)(1)(B), (b) and 2.

### COUNT 11
**Honest Services Wire Fraud**
**Title 18, United States Code, Sections 1343, 1346, and 2**

96.    The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 8 and 70 through 89 of this Information as if fully set forth herein:

97.    Beginning in or around April 2022 and continuing until in or around July 2024, in the District of South Carolina and elsewhere, the Defendant, **JEROME SYDNEY HEYWARD**, and others known and unknown to the United States Attorney, knowingly devised and intended to devise a scheme and artifice to defraud and deprive the citizens and the government of North Charleston, South Carolina of their intangible right to the honest and faithful services of the North Charleston City Council through bribery and kickbacks.

98.    On or about December 27, 2022, in the District of South Carolina and elsewhere, the Defendant, **JEROME SYDNEY HEYWARD**, aided and abetted by others both known and unknown to the United States Attorney, having devised the above-described scheme and artifice to defraud and deprive by means of material false and fraudulent pretenses, representations, and promises, and by the omission of material information, and for the purpose of executing the above-described scheme and artifice to defraud and deprive, transmitted and caused to be transmitted by

26

means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, that is: a $40,000 wire from Lorenzo Financial Services LLC's account ending in 2169 to a checking account belonging to **JEROME SYDNEY HEYWARD** ending in 4304;

All in violation of Title 18, United States Code, Sections 1343, 1346, and 2.

### COUNTS 12 through 14
### Money Laundering, 18 U.S.C. Sections 1956(a)(1)(B)(i)

43.     The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 8 and 70 through 89 of this Information as if fully set forth herein:

44.     On or about the dates listed below, in the District of South Carolina and elsewhere, the defendant, **JEROME SYDNEY HEYWARD**, knowing that the property involved in the financial transactions listed below represented the proceeds of some form of unlawful activity, which property in fact involved the proceeds of specified unlawful activity, knowingly and willfully conducted and caused to be conducted the financial transactions set forth below knowing that such transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, to wit: federal program theft and bribery in violation of Title 18, United States Code, Section 666 and honest services wire fraud in violation of Title 18, United States Code, Sections 1343 and 1346, and each transaction affecting interstate commerce, in that the defendant **JEROME SYDNEY HEYWARD** caused funds derived from the specified unlawful activity to be transferred from accounts controlled by Michelle Stent-Hilton and Donavan Laval Moten to an account controlled by Rose Lorenzo, and then from the account controlled by Rose Lorenzo to an account controlled by **JEROME SYDNEY HEYWARD**, as set forth below:

| Count | Approximate Dates | Description |
|-------|-------------------|-------------|
| 12 | December 22, 2022 | Cashier's check from DEEP SC to Lorenzo Financial Services LLC account ending in 2169 |
| 13 | December 23, 2022 | Cashier's check from Core4Success account ending in 1687 to Lorenzo Financial Services LLC account ending in 2169 |
| 14 | December 27, 2022 | $40,000 wire transfer from Lorenzo Financial Services LLC account ending in 2169 to account controlled by **JEROME SYDNEY HEYWARD** ending in 4304 |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

**FORFEITURE**

EXTORTION/BRIBERY/FRAUD:

Upon conviction for violation of Title 18, United States Code, Sections 371, 666, 1343, and 1951 as charged in this Information, the Defendant, **JEROME SYDNEY HEYWARD**, shall forfeit to the United States any property, real or personal, constituting, derived from or traceable to proceeds the Defendant obtained, directly or indirectly, as a result of such offenses.

MONEY LAUNDERING:

Upon conviction for violation of Title 18, United States Code, Section 1956, as charged in this Information, the Defendant, **JEROME SYDNEY HEYWARD**, shall forfeit to the United States any property, real or personal, constituting, derived, from or traceable to proceeds the Defendant obtained directly or indirectly as a result of such offenses and any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956, as charged in the Information.

PROPERTY:

Pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 982(a)(2)(A), and 28 U.S.C. § 2461(c), the property which is subject to forfeiture for the violations charged in this Information includes, but is not limited to, the following:

    A.    Cash Proceeds / Forfeiture Judgment:

    A sum of money equal to all proceeds the Defendant obtained, directly or indirectly, from the offenses charged in this Information, and all interest and proceeds traceable thereto, and/or such sum that equals all property derived from or traceable to his violations of 18 U.S.C. §§ 371, 666, 1343, and 1951.

B.     <u>Money Laundering/Forfeiture Judgment</u>:

A sum of money equal to all property involved in the money laundering offenses charged in the Information, and all interest and proceeds traceable thereto as a result of his violation of 18 U.S.C. § 1956.

<u>SUBSTITUTE ASSETS</u>:

If any of the property described above as being subject to forfeiture to the United States, as a result of any act or omission of the Defendant,

(1)     Cannot be located upon the exercise of due diligence;

(2)     Has been transferred or sold to, or deposited with a third party;

(3)     Has been placed beyond the jurisdiction of the Court;

(4)     Has been substantially diminished in value; or

(5)     Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), [incorporating Title 21, United States Code, Section 853(p)], to seek forfeiture of any other property of the said Defendant up to the value of the above forfeitable property.

Pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c).

[SIGNATURE PAGE TO FOLLOW]

BROOK B. ANDREWS
ACTING UNITED STATES ATTORNEY

By: _____
Emily Evans Limehouse (Fed. ID #12300)
Whit Sowards (Fed. ID # 11844)
Assistant United States Attorneys
151 Meeting Street, Suite 200
Charleston, SC 29401
Tel.:    (843) 727-4381
Fax:    (843) 727-4443
Email: Emily.Limehouse@usdoj.gov